**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1568-19

BOARD OF EDUCATION OF
THE TOWNSHIP OF BRICK
(OCEAN COUNTY), BOARD OF
EDUCATION OF THE
TOWNSHIP OF JACKSON
(OCEAN COUNTY), BOARD OF
EDUCATION OF THE
MANALAPAN-ENGLISHTOWN
REGIONAL SCHOOL DISTRICT
(MONMOUTH COUNTY),
BOARD OF EDUCATION OF
THE TOMS RIVER REGIONAL
SCHOOL DISTRICT (OCEAN
COUNTY), BOARD OF
EDUCATION OF THE
TOWNSHIP OF LACEY
(OCEAN COUNTY), BOARD OF
EDUCATION OF THE FREEHOLD
REGIONAL HIGH SCHOOL
DISTRICT (MONMOUTH
COUNTY), BOARD OF
EDUCATION OF THE TOWNSHIP
OF WEYMOUTH (ATLANTIC
COUNTY), BOARD OF
EDUCATION OF THE TOWNSHIP
OF OCEAN (MONMOUTH
COUNTY), TOWNSHIP OF BRICK
(OCEAN COUNTY), TOWNSHIP
OF TOMS RIVER (OCEAN

COUNTY), BOROUGH OF SOUTH
TOMS RIVER (OCEAN COUNTY),
BOROUGH OF BEACHWOOD
(OCEAN COUNTY), BOROUGH
OF PINE BEACH (OCEAN
COUNTY), and STEPHANIE
WOHLRAB, an individual taxpayer
of Brick Township,

     Petitioners-Appellants,

v.

LAMONT REPOLLET,
Commissioner, New Jersey
Department of Education, and
ELIZABETH MAHER MUOIO,
New Jersey State Treasurer,

     Respondents-Respondents.

_____

Submitted March 8, 2021 – Decided September 1, 2021

Before Judges Currier and DeAlmeida.

On appeal from the New Jersey Commissioner of Education, Docket No. 19-1/19.

Weiner Law Group, LLP, attorneys for appellants (Mark A. Tabakin and Stephen J. Edelstein, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for the respondents (Sookie Bae, Assistant Attorney General, of counsel; Christopher Weber and Amna T. Toor, Deputy Attorneys General, on the brief).

2

PER CURIAM

Petitioners, six boards of education, five municipalities, and one taxpayer, appeal from the October 31, 2019 final agency decision of respondent Commissioner (Commissioner), Department of Education (DOE), dismissing their challenge to the statutory allocation of State aid for education for fiscal year (FY) 2019 for failure to state a claim upon which relief can be granted. We affirm.

I.

In January 2008, the Legislature enacted the School Funding Reform Act of 2008 (SFRA), N.J.S.A. 18A:7F-43 to -70. Enactment of SFRA followed decades of litigation over school funding. Abbott v. Burke, 199 N.J. 140 (2009) (Abbott XX). The statute is intended to fulfill the State Constitution's mandate that the Legislature provide for the maintenance and support of a thorough and efficient system of free public schools for children between the ages of five and eighteen years. Id. at 144, 147-48; N.J.S.A. 18A:7F-44; see also N.J. Const. art. VIII, § 4, ¶ 1 (Thorough and Efficient Clause). The SFRA created a "clear, unitary, enforceable statutory formula to govern appropriations for education . . . ." N.J.S.A. 18A:7F-44(g).

3

SFRA established a structure for public school funding through which school districts fund their budgets using a combination of local property taxes and State aid.[1] Ibid. The core of the formula is the "adequacy budget," which is designed to support the majority of educational resources needed by children in each district. N.J.S.A. 18A:7F-51. The adequacy budget is an estimate of what it costs each district to provide the "comprehensive curriculum standards" (CCCS) to each student according to the district's enrollment and student characteristics. The adequacy budget is calculated on a per-pupil base cost that reflects the costs of educating an elementary school student with no special needs, with weighted adjustments to reflect the additional costs of educating middle school students, high school students, at-risk and limited English proficiency students, and students requiring special education. Abbott XX, 199 N.J. at 153. The DOE uses the adequacy budget in its formula for determining the amount of each district's State aid. See N.J.S.A. 18A:7F-51 and -53.

A primary distinction between the SFRA and older school funding formulae is that "virtually all aid under the new formula is wealth-equalized."

---

[1] The SFRA provides for several categories of State aid. See, e.g., N.J.S.A. 18A:7F-52, -54 to -58 (providing equalization, preschool, special education, security, transportation, and adjustment aid). "State aid" is a term that encompasses each of these categories.

A-1568-19

Abbott v Burke, 196 N.J. 544, 556 (2008) (Abbott XIX). This means that while the SFRA allocates State aid to school districts, the statute "requir[es] certain levels of funding at the local level." Abbott XX, 199 N.J. at 152. As a result, "[e]ach district contributes to its adequacy budget an amount that is based on its ability to raise local revenue." Abbott XIX, 196 N.J. at 556-57.

This local portion, commonly known as the "local fair share" or "LFS," is calculated by "indexing the district's property wealth and aggregate income using statewide multipliers." Id. at 557; see also N.J.S.A. 18A:7F-52(a). Each district "must provide the lesser of either its LFS, as calculated using SFRA's formula, or the local share it raised in the previous year[,]" often referred to as the "required local share." Abbott XX, 199 N.J. at 155; N.J.S.A. 18A:7F-5(b). This is the district's minimum contribution to its annual budget.

Once the adequacy budget and LFS are calculated, DOE computes the allocation of "equalization aid" for each district. Equalization aid is a category of State aid to each district for general fund expenses to support the district in meeting the cost of CCCS. N.J.S.A. 18A:7F-53. Equalization aid is calculated by subtracting the district's LFS from its adequacy budget, provided that equalization aid shall not be less than zero. Ibid. The SFRA also contained a

State aid growth limit, which capped the total percentage increase in State aid that a district could receive from year to year.

The SFRA's formula reflects the legislative intention that relatively wealthier municipalities will contribute proportionally more on a local level to their districts' budgets than poorer municipalities, thus enabling the State to allocate school aid more equitably to needier districts. See N.J.S.A. 18A:7F-44(d). The Supreme Court found the SFRA to be constitutional shortly after its enactment. Abbott XX, 199 N.J. at 175.

In 2011, the Court revisited the SFRA due to funding shortages. Abbott v. Burke, 206 N.J. 332, 370 (2011). Although the Court disapproved of the Legislature's failure to fully fund the SFRA formula as to Abbott districts, it otherwise reaffirmed the constitutionality of SFRA as to all other districts, even though the State aid for those districts due under the SFRA formula was not fully funded. Id. at 369-70.

In 2017, the Legislature took steps to address growing imbalances created by districts that were levying local property taxes well below their respective LFS. On July 24, 2018, the Legislature amended the SFRA with the passage of L. 2018, c. 67 (Chapter 67), which amended the formula to calculate the required local share. Pursuant to Chapter 67, in school years 2019-2020 through 2024-

6

2025, certain districts that receive decreased State aid because of changes in the required local share are required to increase their tax levy by two percent over the prior year. L. 2018, c. 67, § 2; N.J.S.A. 18A:7F-5(d). As a result, certain districts are required to contribute more to fund schools through their local levies. To make up for the anticipated reduction in State aid, Chapter 67 provided districts with new tools to raise revenue.

All State aid must be approved through legislative appropriation. The New Jersey Constitution requires an annual balanced budget. N.J. Const. art. VIII, § 2, ¶ 2. The State operates on an FY that begins on July 1 and ends on June 30. Each year in February or March, the Governor presents a budget message to the Legislature in which he or she presents the balances of State funds on hand, the administration's revenue projections for the upcoming FY, and proposed spending for the upcoming FY. N.J.S.A. 52:27B-20. Proposed spending on School aid is included in the Governor's budget message. Although the Governor has the statutory authority to propose a budget, the power to appropriate State funds is vested exclusively in the Legislature through enactment of an Appropriation Act. See N.J. Const. art. VIII, § 2, ¶ 2.

Within two days of the Governor's budget message, the Commissioner must notify each school district of the amount of State aid proposed by the

Governor for the district for the upcoming FY. N.J.S.A. 18A:7F-5. This is known as an "aid notice." However, because all appropriations are subject to legislative approval, no allocation of State aid is certain until the annual Appropriations Act is enacted.

Chapter 67 was enacted shortly after the start of FY 2019 and the enactment of the Appropriations Act and a supplemental Appropriations Act for that FY. To address funding inequities in the short term and to transition to Chapter 67 funding, the Legislature included provisions in the FY 2019 Appropriations Act that modified the Governor's budget message for FY 2019 with respect to State aid. See L. 2018, c. 53 (Appropriations Act) (Chapter 53); L. 2018, c. 54 (Supplementary Appropriations Act) (Chapter 54). In short, these acts provide that if a district's prior year State aid was less than its uncapped aid, that district received an increase in State aid for FY 2019; and, if a district's prior year State aid was more than its uncapped aid, that district saw a decrease in State aid for FY 2019. Chapter 67 follows a similar formula by defining a "[S]tate aid differential," which is a measure of the extent to which a district is overfunded and underfunded. The State aid differential is used to calculate gains and losses in State aid for the district.

Chapter 53 and 54 also require that "[a]ny reduction in State aid pursuant to this provision shall first be deducted from the amount of adjustment aid in the school district's March 2018 aid notice . . . ." L. 2018, c. 53 and c. 54. Essentially, more than a decade after SFRA's enactment, the Legislature began phasing out the "transitional assistance" that it had provided in the form of adjustment aid. For FY 2019, the Commissioner distributed State aid in accordance with the mandates in Chapters 53, 54 and 67.

On January 22, 2019, petitioners Brick Township Board of Education, Jackson Township Board of Education, Manalapan-Englishtown Regional Board of Education, Toms River Regional Board of Education, Lacey Township Board of Education, Freehold Regional High School District Board of Education, Brick Township, Toms River Township, South Toms River Township, Beachwood Borough, Pine Beach Borough, and Stephanie A. Wohlrab, who is a Brick Township taxpayer, parent of a student in the Brick Township Public Schools, and President of the Brick Township Board of Education (collectively Petitioners), filed a petition of appeal with the DOE.[2]

---

[2] Weymouth Township Board of Education and Township of Ocean Board of Education joined the petition, but withdrew as petitioners prior to issuance of the Commissioner's final decision. The petitioners also named State Treasurer Elizabeth Maher Muoio as a respondent.

The district petitioners are not <u>Abbott</u> districts. Petitioners alleged that SFRA, as amended by Chapter 67, is not equitable, predictable, or constitutional, both facially and as applied, and that their respective school districts are underfunded for FY 2019 and beyond, depriving them of due process and equal protection.

Petitioners also alleged they are treated unfairly in the SFRA and Chapter 67 because municipalities that have awarded tax abatements, in particular payments-in-lieu-of-taxes (PILOT) agreements, have artificially deflated local fair shares under the statutory formula. This is so, according to petitioners, because PILOT agreements do not generate income for school districts and properties subject to those agreements are not included in the calculation of a municipality's ratable property base. They alleged that the exclusion of properties subject to PILOT agreements in other municipalities in the funding formula has an impact on petitioners because their local fair shares are determined not only on their aggregate income and equalized property value, but also their wealth relative to the wealth of other districts in the State.

In addition, relying on the differences between the amount of State aid for their districts proposed in the Governor's FY 2019 budget message and the amount of State aid their districts received after enactment of Chapters 53, 54, and 67, petitioners argued that State aid was not allocated in accordance with

10 <span>A-1568-19</span>

the SFRA, as it was approved by the Supreme Court. They alleged they are underfunded, which caused them to raise local property taxes and pay more than one hundred percent of their "proper" LFS. Petitioners also alleged that the underfunding has and will continue to cause them, in an effort to not unduly burden taxpayers, to cut programs, institute budgetary restrictions, and/or spend down their fund balances.

Petitioners sought declaratory determinations that: (1) the "methodology" to determine State aid used by the Commissioner must be modified for the 2019-2020 school year and beyond to comply with the State Constitution and existing law; (2) the State Treasurer must provide the Commissioner with sufficient funds to allocate State aid to petitioners to comply with the State Constitution and existing law; and (3) the taxpayers in the petitioners' districts are paying more than their fair or lawful share of property taxes for school district use.

Petitioners also sought an order directing: (1) the Commissioner to reallocate State aid to petitioners at their pre-Chapter 67 levels so that they receive an equal, equitable, and predictable amount of State aid and are not underfunded; (2) the State Treasurer to allocate to the Commissioner an amount adequate and sufficient to comply with such an order; and (3) the Commissioner to "retain jurisdiction and oversight over this matter to ensure" that the

11

declarations and orders sought by petitioners are carried out on an ongoing basis. Finally, petitioners sought the appointment of a monitor to assist with oversight of implementation of the orders requested, as well as attorney's fees and costs.

The Commissioner transmitted the petition to the Office of Administrative Law (OAL) as a contested case. Shortly thereafter, the Commissioner and the State Treasurer moved to dismiss the petition for failure to state a claim upon which relief can be granted pursuant to N.J.A.C. 6A:3-1.5(g) and -1.10.

On August 1, 2019, Administrative Law Judge Ellen S. Bass issued an initial decision and recommendation granting respondents' motion to dismiss the petition. ALJ Bass began her analysis by finding that the petition is properly viewed as one complaining of an alleged unfair local tax burden from implementation of SFRA and Chapter 67 for FY 2019 and not a petition alleging the deprivation of a thorough and efficient system of public education in petitioners' school districts. The ALJ characterized petitioners' claims as an argument that the Thorough and Efficient Clause requires they receive School aid at the level provided in the SFRA prior to enactment of Chapter 67.

Relying on our holding in Stubaus v. Whitman, 339 N.J. Super. 38, 48, 56 (App. Div. 2001), ALJ Bass concluded that the municipality petitioners lacked standing to assert their claims. The ALJ concluded that "[t]he claim that the

amendments to the SFRA unfairly burden taxpayers in their communities can be brought only by those taxpayers." In addition, she concluded that "any allegations that the SFRA amendments deprive the children in their communities of" a thorough and efficient education "belongs to those taxpayers and their children, and not to the municipalities in which those children reside." The ALJ also found that municipalities "lack the legal capacity to challenge State action based on equal protection grounds."

ALJ Bass also concluded that the school district petitioners lacked standing to vindicate the rights of taxpayers or to assert equal protection claims. The ALJ noted that "[b]ecause school districts are creatures of the State, no school district can be the subject of discriminatory practice by the State." The ALJ noted that the petitioners are not Abbott districts and do not allege a claim that their level of State aid for FY 2019 prevents them from meeting their constitutional obligation to provide a thorough and efficient education to their students. The programmatic and staffing reductions alleged by petitioners, the ALJ found, even if taken as true, do not amount to allegations of a constitutional dimension.

The ALJ also concluded that allegations of inequitable local taxation among school districts cannot form the basis of a viable constitutional claim

under the Thorough and Efficient Clause.  See Stubaus, 339 N.J. Super. at 52-57.  ALJ Bass noted that the Supreme Court "rejected the argument that the [Thorough and Efficient Clause] mandates statewide equity of tax burdens and [has] interpreted [the Clause] to ensure equal educational opportunity, but not taxpayer equality."  Id. at 53 (citing Robinson v. Cahill, 62 N.J. 473, 512-13 (1973) (Robinson I)).  The ALJ relied on the Court's holding that while the State is obligated to provide public school children an equal educational opportunity, it can meet that burden "by financing education either on a statewide basis with funds provided by the State, or, in whole or in part, by delegating the fiscal obligations to local taxation."  See Robinson v. Cahill, 69 N.J. 133, 142 (1975) (Robinson II).

The ALJ also found that the holding in Camden v. Byrne, 82 N.J. 133 (1980), precluded the school districts' claims that they are entitled to the amount of State aid proposed in the Governor's budget message for FY 2019, but not appropriated by the Legislature.

With respect to Wohlrab, the ALJ found that although she had standing to allege claims of unfair taxation and the denial of a thorough and efficient education for her children, she failed to do so.  This is so, the ALJ found, because Supreme Court precedents allow the Legislature to allocate the financial

14

burden for financing public schools to local entities and do require that the burden must be equal among school districts and because the Brick Township Board of Education does not allege it is unable to meet its constitutional obligation to provide a thorough and efficient education to its students.

Finally, the ALJ concluded that Wohlrab did not allege a viable equal protection claim because, as we noted in Stubaus, the Court has rejected application of an equal protection analysis to Thorough and Efficient Clause claims. See Stubaus, 339 N.J. Super. at 57 (citing Robinson I). The ALJ noted the Court's caution against "the monumental governmental upheaval that would result if the equal protection doctrine were held applicable to the financing of education . . . ." Abbott v. Burke, 119 N.J. 287, 390 (1990) (Abbott II).

Petitioners filed exceptions from the ALJ's initial decision and recommendation with the Commissioner.

On October 31, 2019, the Commissioner issued a final decision adopting the ALJ's initial decision and recommendation "for the reasons thoroughly analyzed and discussed" by ALJ Bass. The Commissioner determined that a full hearing was unnecessary because he concurred with the ALJ's determinations regarding standing and her conclusion "that the petition does not properly allege a claim that the SFRA as amended denied students in the petitioning districts

access to" a thorough and efficient public education, and that petitioners did not raise "a viable claim that their State aid was underfunded" for FY 2019. Finally, the Commissioner agreed with the ALJ's equal protection analysis and her conclusion that Wohlrab failed to allege any viable claims.

This appeal follows. Petitioners raise the following arguments.

POINT I

THE COMMISSIONER OF EDUCATION'S FINAL DECISION IS ENTITLED TO NO DEFERENCE UPON APPELLATE REVIEW AND MUST BE OVERTURNED.

POINT II

THE RESPONDENTS FAILED TO MEET THEIR HEAVY BURDEN ON A MOTION TO DISMISS AND, THUS, THE COMMISSIONER OF EDUCATION'S FINAL DECISION MUST BE OVERTURNED.

POINT III

THE APPELLATE DIVISION SHOULD APPLY UNDISPUTED FACTS AND RESULTING CONCLUSIONS OF LAW AS TO THE SUBSTANCE OF THE PETITION OF APPEAL AND FASHION APPROPRIATE RELIEF, OR, ALTERNATIVELY, REMAND THE MATTER TO THE OFFICE OF ADMINISTRATIVE LAW FOR FURTHER DISCOVERY AND, ULTIMATELY, A PLENARY HEARING ON THE MERITS OF APPELLANT[S'] PETITION.

16

II.

A "strong presumption of reasonableness attaches to the actions of the administrative agencies." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). The scope of our review of a final decision of an administrative agency is limited and we will not reverse such a decision unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). When making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

We are, however, "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue . . . ." Carter, 191 N.J. at 483 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We will,

17

however, generally "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing."  Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 420 (2009) (quoting Richardson v. Bd. of Trs., 192 N.J. 189, 196 (2007)).

The standards governing the grant or denial of a motion to dismiss for failure to state a claim in the administrative context are identical to those governing a similar motion in the Superior Court.  Compare N.J.A.C. 6A:3-1.10 with Rule 4:6-2(e); see also Sloan ex rel. Sloan v. Klagholtz, 342 N.J. Super. 385, 393-94 (App. Div. 2001).  When reviewing a motion to dismiss pursuant to Rule 4:6-2(e), the inquiry is "limited to examining the legal sufficiency of the facts alleged on the face of the complaint."  Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746 (1989).  A reviewing court must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim . . . ."  Ibid. (internal quotation omitted).  A complaint will not be dismissed if a cause of action is suggested by the facts alleged.  Ibid.

Although this standard is a "generous one" for a plaintiff, a pleading will be dismissed if it states no basis for relief and discovery would not provide one.  Green v. Morgan Props., 215 N.J. 431, 451 (2013); Rezem Family Assocs., L.P.

v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011). A party cannot satisfy its obligations to identify a cognizable claim with conclusory or vague allegations. Delbridge v. Office of the Public Defender, 238 N.J. Super. 288, 314 (Law Div. 1989). While a complaint is entitled to a liberal reading, it must allege facts that give rise to a legal cause of action; mere conclusion cannot suffice. Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-2 (2020) (citing Glass v. Suburban Restoration Co., 317 N.J. Super. 574, 582 (App. Div. 1998)). "We review a grant of a motion to dismiss a complaint for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014).

We begin with the Commissioner's decision with respect to the "threshold justiciability determination of whether" petitioners have standing, i.e., a sufficient interest in the matter so as to allow them "to initiate and maintain an action." Spinnaker Condo. Corp. v. Zoning Bd. of Sea Isle City, 357 N.J. Super. 105, 110 (App. Div. 2003). Standing requires a plaintiff to have: (1) "a sufficient stake in the outcome of the litigation[;]" (2) "a real adverseness with respect to the subject matter[;]" and (3) "a substantial likelihood . . . [of] suffer[ing] harm in the event of an unfavorable decision." In re Camden Cty., 170 N.J. 439, 449

19

(2002). We generally apply a "generous view" of standing. <u>In re State Contract A71188</u>, 422 N.J. Super. 275, 289 (App. Div. 2011).

We agree with the Commissioner's determination that our holding in <u>Stubaus</u> precludes the municipality petitioners from alleging claims based on an alleged unfair tax burden and any alleged educational deficiency caused by a lack of State aid. In <u>Stubaus</u>, a number of taxpayers and school districts challenged the public school funding system in place at that time. We affirmed the trial court's dismissal of the complaint with prejudice, relying on the holding in <u>Robinson I</u> that the Thorough and Efficient Clause is not intended to ensure statewide equity among taxpayers. 339 N.J. Super. at 53-56. It is the Legislature's prerogative to allocate among its political subdivisions the financial responsibility for funding public education. <u>See</u> <u>Robinson II</u>, 69 N.J. at 142. In addition, claims of educational deficiencies or inadequacies belong to school districts, parents, or students, not municipalities.[3]

---

[3] For the same reasons, we agree with the Commissioner's determination that petitioners cannot allege a valid claim that they are entitled to the level of funding proposed in the Governor's budget message for FY 2019, absent an appropriation enacted by the Legislature. It is well established that the Legislature has the sole power and responsibility to raise revenue and appropriate funds for the operation of our State government. N.J. Const. art. VIII, §2, ¶2; <u>see</u> <u>Byrne</u>, 82 N.J. at 149 (1980) ("There can be no redress in the courts to overcome either the Legislature's action or refusal to take action

We are not convinced by the municipality petitioners' attempts to distinguish their claims from those raised in Stubaus.  Although petitioners allege that the level of State aid they received for FY 2019 has caused, or threatens to cause, them to reduce staff and programming, the basis of their claims is that these cuts are, in part, the product of petitioners' decision not to overly burden their taxpayers by raising additional local revenue to support schools.

In addition, we agree with the Commissioner that it is well established that the municipality petitioners and the school district petitioners lack standing to raise equal protection claims against the State.  Stubaus, 339 N.J. Super. at 48 (citing City of Newark v. New Jersey, 262 U.S. 192, 196 (1921); McKenney v. Byrne, 82 N.J. 304, 315 n.4 (1980)).

We agree with the Commissioner's conclusion that the district petitioners have standing to raise claims of educational inadequacy and inequality and that Wohlrab has standing to allege that her children are being denied a thorough and efficient education.  However, as the Commissioner concluded, an indulgent

pursuant to its constitutional power over state appropriations").  The prohibition on the expenditure of State funds without legislative authorization is "the center beam of the State's fiscal structure."  Id. at 146.

A-1568-19

review of the petition does not reveal allegations of such claims upon which relief can be granted.

While a thorough and efficient education is a "continually changing concept," it is student-focused, and establishing a constitutional deprivation requires a demonstration that a district's students' educational opportunities are so deficient as to jeopardize their futures. Abbott II, 119 N.J. at 303. To plead a valid deprivation of a thorough and efficient education, a petitioner must allege facts that students in the district are not being "equip[ped] for [their] role[s] as citizen[s] and competitor[s] in the labor market . . . ." Id. at 313 (citing Robinson I, 62 N.J. at 515).

Having reviewed the petition, we agree with the conclusion of the ALJ, adopted by the Commissioner, that "the petitioning Boards do not aver with any specificity that they will be unable to raise the local taxes needed to deliver" a thorough and efficient education to their students. While petitioners allege that in some instances districts would be unable to raise local property taxes because of the State-imposed cap on property tax increases, they do not allege how the cap would directly impact the named parties or affect the delivery of essential educational programming. Petitioners allege programming and staff cuts made, or contemplated for future years, as a result of decreased State aid and

petitioners' decision not to overburden taxpayers by raising additional local revenue for education. Petitioners do not allege deprivations in their educational programs of a constitutional dimension.[4]

At base, petitioners assert their disagreement with the amount of State aid appropriated to them by the Legislature for FY 2019 and the amounts of State aid they expect to receive in future years to the extent that the Legislature continues to appropriate State aid in accordance with the SFRA, as amended by Chapter 67. Because they have not alleged a viable constitutional claim under the Thorough and Efficient Clause, petitioners' disagreement with the Legislature's appropriations must be addressed to the elected branches of government, which have the sole authority to determine how to appropriate State funds, in the absence of a constitutional mandate.

---

[4] We agree with the Commissioner's conclusion that while Wohlrab has standing to allege claims of unfair taxation and equal protection violations, those claims are precluded by well-established precedents. See Robinson II, 69 N.J. at 142 (1975) (holding that the Legislature may delegate the fiscal obligations to fund schools to local governments); Stubaus, 339 N.J. Super. at 53 (holding that Constitution does not guarantee taxpayers in various districts bear the burden of financing education equally); Abbott II, 119 N.J. at 390 (holding that an equal protection analysis is inapplicable to funding claims under the Thorough and Efficient Clause).

A-1568-19

To the extent we have not specifically addressed any of petitioners' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1568-19